EL PUEBLO *v.* DÍAZ, *alias* MARTILLO.

APELACIÓN procedente de la Corte de Distrito de Humacao.

No. 3.—Resuelto en febrero 27, 1904.

PLIEGO DE EXCEPCIONES.—El pliego de excepciones debe contener solamente aquella parte de la prueba que sea necesaria para exponer los puntos de derecho en que se funden las excepciones, y el juez del inferior debe eliminar todas las materias que no sean propias de dicho pliego.

ID.—APELACIÓN—PRUEBAS—VEREDICTO.—El Tribunal Supremo no puede revocar un fallo por virtud de apelación fundado en que el veredicto es contrario a derecho o a las pruebas cuando no se hubiere sometido a su consideración toda la prueba practicada en el juicio, ni se hubieren planteado en el pliego de excepciones las cuestiones de derecho surgidas durante el juicio; en tal caso hay que presumir que el veredicto ha sido pronunciado con arreglo a derecho y a las pruebas practicadas.

NUEVO JUICIO—DESCUBRIMIENTO DE NUEVAS PRUEBAS.—Para que una moción de nuevo juicio, fundada en el descubrimiento de nuevas pruebas, pueda prosperar, no solamente es necesario probar bajo juramento que se practicaron las diligencias necesarias para conseguir dichas pruebas antes del juicio, y que fueron descubiertas con posterioridad al mismo, sino que hay que mostrar, además, cuáles fueran las diligencias practicadas, a fin de que el tribunal pueda apreciar si se desplegó la mayor actividad posible para el descubrimiento de tales pruebas.

ID.—Si al hacer una moción solicitando nuevo juicio, fundada en el descubrimiento de nuevas pruebas, se propusieran entre éstas, declaraciones testificales, es necesario demostrar la razón que hubiera para no proponer tales declaraciones en el juicio original y la manera en que la parte vino a descubrir que tales declaraciones podían ser favorables a su causa.

SOBRESEIMIENTO DE LA CAUSA.—Cuando en una causa criminal no se celebrare el juicio dentro de 120 días a contar desde la presentación de la acusación, y hubiere para ello justa causa, no procederá decretar el sobreseimiento (*) del proceso, que debe además ser solicitado ante el tribunal inferior.

PRUEBAS—IMPUGNACIÓN DE LA VERACIDAD DE LOS TESTIGOS.—Para impugnar la veracidad de los testigos, fundado en haber hecho manifestaciones anteriores, contrarias a las hechas en el juicio, es necesario que se les muestren antes de interrogarles sobre las mismas, si constaren por escrito, y si las reconocieran como suyas, deberá permitírseles que las expliquen; si las manifestaciones fueren verbales, se les referirán a dichos testigos con todas sus circunstancias y se les permitirá asimismo que las expliquen.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Juan R. Ramos.*

Abogado del apelado: *Sr. del Toro, Fiscal.*

EL JUEZ ASOCIADO SR. HERNÁNDEZ emitió la siguiente opinión del tribunal:

El caso sometido a la decisión de esta Corte Suprema, es un recurso de apelación interpuesto por Pedro Díaz, *alias* Martillo, contra sentencia del Tribunal de Distrito de Humacao que le condena a la pena de muerte.

El apelante fué acusado en 29 de diciembre de 1902 por el Fiscal de Distrito de Humacao, como autor de delito de asesinato en primer grado, cometido del modo siguiente: "La noche del 26 de agosto próximo pasado, en momentos en que Octavio Reyes Guzmán pasaba por frente a la casa de Juan Martínez Espino, calle de Santa Rosa, donde se hallaba escondido Pedro Díaz, éste salió y disparó a Reyes un tiro, cayendo éste a tierra y falleciendo luego. Este hecho ha sido

cometido con premeditación y malicia. Este hecho es contrario a la ley para tal caso prevista, y a la paz y dignidad del Pueblo de Puerto Rico."

Con fecha 13 de enero siguiente compareció el acusado ante el tribunal y negó la acusación, solicitando se le concediera un término prudencial para contestarla, término que le fué concedido hasta el día 21 del propio mes; pero el día antes presentó escrito el abogado del reo, con súplica de que fuera requerido el Fiscal para la entrega de la lista de testigos que con su acusación debió presentar, en cumplimiento del artículo 142 del Código de Enjuiciamiento Criminal, y que (*) debió serle entregada para contestar la acusación. Por acuerdo del tribunal se hizo el requerimiento solicitado, y sin que el Fiscal hubiera presentado la indicada lista, el abogado del acusado presentó escrito negando la acusación formulada contra su defendido y alegando su inocencia, con expresión de los testigos y peritos de que intentaba valerse.

Señalado para el juicio por jurado el día 16 de febrero, solicitó en 10 del propio mes que fueran también citados como testigos de la defensa, Don Frank Feuille, Don Andrés B. Crosas, Don Rafael Tirado Verrier, Don Francisco Cepero López Náter y Don Francisco López Cepero Gómez, como así se dispuso en la misma fecha.

No consta en autos la resolución del tribunal ordenando la suspensión del juicio, pero sí aparece que con fecha 17 de febrero el defensor de Pedro Díaz presentó escrito en que manifesta, que habiéndose suspendido dicho juicio en el día anterior por no haber tiempo suficiente para celebrarlo, toda vez que tenía otras ocupaciones el tribunal, suplicaba se señalase el día 21 para que tuviera lugar, y en caso de que se estimara conveniente la insaculación de un nuevo jurado se procediera a ello, citándole para dicho día.

El tribunal dictó auto en 28 de abril, señalando para la celebración del juicio el día 18 de mayo con citación de las

partes y de los testigos de descargo propuestos por la defensa.

Con fecha 6 de mayo citado presentó escrito el abogado de Pedro Díaz renunciando la declaración de los testigos Don Frank Feuille y Don Andrés Crosas, por tener entendido que el primero no podría asistir al juicio por estar al frente del Departamento de Justicia, y el segundo por sus muchas ocupaciones, concurriendo además las circunstancias de no ser ya de importancia las declaraciones de ambos por haber declarado en el juicio seguido contra Luis Delgado y otros por perjurio, que guarda relación íntima con la presente causa, y constar esas declaraciones en el acta de aquel (*) juicio, habiendo interesado además se expidiera certificación del acta del juicio contra Luis Delgado y otros por perjurio y de la sentencia recaída, como también del veredicto dado por el jurado.

Trajéronse a los autos las actas del juicio contra José Moreno, Luis Delgado, Santiago Martínez y Manuel Santori por el delito de perjurio, actas correspondientes a las sesiones que tuvieren lugar el 16 de febrero de 1903, y de las que aparece que en ese juicio declararon como testigos de la acusación el Hon. Frank Feuille, Hon. Francisco López Cepero Náter, el capitán de la Policía Insular, Mr. Wilcox, Don Francisco Bussó Cabrera, Don Andrés Crosas, Martín Julbe y Pedro Astacio, y como testigo de la defensa Celestino Alonso; siendo de notar que Don Francisco López Cepero Náter manifestó que Martín Julbe y Pedro Astacio, al declarar en la causa de los sucesos de la botica, no hicieron acusación alguna contra Pedro Díaz, alias Martillo, por asesinato, y Don Andrés Crosas que no había decretado el arresto de Pedro Díaz en vista de la acusación que se le hizo por asesinato, porque no lo creyó conveniente, expresando Mr. Wilcox que el Sr. Bussó Cabrera fué llamado por el Hon. Assistant Attorney para firmar la denuncia y cuando acudió al llamamiento no sabía por qué se le llamaba, habiéndola firmado voluntariamente.

No consta el detalle o expresión de lo que declararon los demás testigos, y sí que el jurado por unamimidad declaró inculpable a los acusados y que éstos en su consecuencia fueron absueltos.

Merece consignarse que en el juicio por jurado contra Pedro Díaz, *alias* Martillo, declararon como testigos de cargo Dr. Don Fernando G. González, Don Pablo Font Martelo, Olalla Ortiz, Rafael Martínez, Francisco López Cepero Náter, José Aponte, Pedro Astacio y Martín Julbe, y como testigos de la defensa Martín Julbe, Pedro Astacio, Francisco López Cepero Náter, Octavio Ramírez, Juan Martínez Espino, Luis Berríos Borges y Luis Delgado Carrión, y que (*) a petición del Letrado defensor de Pedro Díaz se hizo constar que Martín Julbe negó haber declarado ante el Juez de Paz en este asunto, y que respecto de Pedro Astacio el Fiscal se opuso a todo interrogatorio fundado en el artículo 244 de la Ley de Enjuiciamiento Criminal, habiendo tomado excepción.

Igualmente debe consignarse que el defensor de Pedro Díaz ofreció como prueba documental la certificación que estaba unida a los autos de varias constancias del juicio contra Luis Delgado y otros por perjurio, y el Fiscal entonces presentó una moción para que fuera reconsiderada dicha prueba, que fué declarada impertinente por el juez de derecho, no obstante la oposición del defensor a semejante moción, consignándose en acta la excepción tomada por el Letrado.

Terminadas las pruebas practicadas y cerrados los debates, el juez de derecho instruyó al jurado de sus obligaciones retirándose éste a deliberar, y habiendo pedido instrucciones que le fueron dadas, pronunció veredicto de culpabilidad contra Pedro Díaz, *alias* Martillo, en 21 de mayo del año próximo pasado.

El letrado defensor del acusado presentó escrito en 23 del propio mayo, solicitando nuevo juicio ante otro jurado, por estimar que el veredicto pronunciado era contrario a derecho y a las pruebas, y por haber descubierto nuevas pruebas que

favorecían a su defendido, las que acababa de descubrir después del veredicto, a cuyo fin alegó: 1. Que siendo precepto de ley que todo acusado debe ser considerado inocente mientras no se pruebe lo contrario, y axioma jurídico que todo el que imputa la comisión de un delito debe probarlo, el Fiscal ha debido probar que Pedro Díaz no sólo era autor de la muerte de Octavio Reyes Guzmán, sino también que obró, con algunas de las circunstancias constitutivas del delito de asesinato en primer grado, lo que no ha verificado, pues únicamente se ha acreditado la muerte de Octavio Reyes (*) Guzmán. 2. Que si bien es verdad que hubo tres testigos, como José Aponte, Pedro Astacio y Martín Julbe que declararon haber presenciado que Pedro Díaz fué el autor de la muerte de Octavio Reyes Guzmán, y la concubina de éste Olalla Ortiz manifestó al jurado ser el acusado autor de dicho delito por habérselo manifestado así el interfecto momentos antes de morir, también es verdad que esas declaraciones fueron destruídas por la prueba de descargo, con la cual se ha acreditado que Reyes Guzmán fué herido, no en el sitio donde cayó, sino frente a la botica del Sr. Noya Julbe, de Humacao, en la noche famosa conocida por la de los sucesos de la botica, y que en la calle en donde cayó casi exánime no se disparó esa noche arma alguna de fuego que pudiera ocasionar la muerte de Reyes Guzmán o de otra persona. 3. Que después de pronunciado el veredicto de culpabilidad había descubierto el acusado que en la ciudad de Humacao existían Don Juan y Don José Bertrán Casañas que podían informar al jurado y al tribunal sobre hechos que se relacionan con la presente causa, y de cuyas declaraciones se desprende que los testigos Pedro Astacio, Martín Julbe y José Aponte no presenciaron el acto de ser herido Reyes Guzmán, y que éste no fué muerto por el acusado, obrando una de esas declaraciones en las diligencias instruídas por el Juez especial, Sr. Crosas, según noticias que acababa de obtener, habiendo además otro testigo o sea Don José Martínez Espino que aca-

baba de asegurarle que vió venir herido a Octavio Reyes Guzmán, y al pasar por su casa, a poca distancia, no pudiendo ya mantenerse en pie, cayó al suelo.

El Fiscal en informe oral se opuso a la anterior moción, que solicitó fuese desestimada; y habiendo preguntado el juez de derecho si juraba que había practicado todas las diligencias necesarias para conseguir pruebas y había tenido conocimiento después del juicio de las que proponía, como (*) así lo jurara; dicho juez señaló el día siguiente para oir dichas pruebas, contra cuya resolución tomó excepción el Fiscal.

En el día expresado y en sesión celebrada al efecto, la representación de Pedro Díaz presentó declaraciones juradas de cinco testigos que lo fueron José Martínez Espino, Feliciano Doble Pou, Juan Guzmán, Luis Castro y José Cintrón Peña, de los cuales el primero declara que en la noche del 26 de agosto de 1902, al sentir unos cuantos disparos, ordenó el cierre de su establecimiento y dejó junta una puerta donde se quedó, habiendo visto venir un hombre quejándose, en quien reconoció a Octavio Reyes Guzmán, al que a pocos pasos vió caer, sin que en la calle en donde vive el testigo y cayó el Reyes se disparara tiro alguno; el segundo, que en la expresada noche del 26 de agosto encontrándose frente a la botica del Sr. Noya Julbe, donde se desarrollaban los sucesos que trajeron como consecuencia la muerte de varios individuos, vió allí entre otras personas a Octavio Reyes Guzmán, a quien oyó cuando dijo "¡ay, me han matado!" desapareciendo Reyes sin que volviese a verlo y sabiendo luego el testigo que había muerto; el tercero, que se encontró en los sucesos de la botica, y allí vió entre otras personas a Octavio Reyes Guzmán, a quien oyó quejarse y manifestar que lo habían matado, desapareciendo el Reyes en seguida; el cuarto, que encontrándose en la calle Nueva el día 26 de agosto o sea el del tumulto, vino Rosa Peña y lo llamó, sintiendo entonces dos tiros hacia la parte de la botica de Noya Julbe, y al oir dos tiros, cuando fueron a ver lo que ocurría e iban por frente de Ramón Piñol,

se encontraron a Octavio Reyes con las manos en el pecho, quien al preguntarle Rosa Peña por lo que pasaba, le contestó que le habían matado, continuando Reyes para arriba y el declarante para abajo; y el quinto, que entre ocho y nueve de la noche del 26 de agosto, se encontraba en la calle Nueva, y al oir unos disparos corrió a enterarse de lo que ocurría, (*) habiendo encontrado en el trayecto frente a la casa del Sr. Piñol a Octavio Reyes, quien preguntado por lo que pasaba contestó "¡ay, que me han matado!" después de lo cual el testigo continuó su camino en dirección al sitio del tumulto, tomando el herido la dirección contraria.

Después de oídas las alegaciones de las partes, el juez desestimó la moción denegando el nuevo juicio, y habiendo tomado excepción el letrado, fundado en el número 3 del artículo 206 de la Ley de Enjuiciamiento Criminal, dictó sentencia concebida en los siguientes términos: "Visto el veredicto del jurado, Pedro Díaz, *alias* Martillo, será ahorcado el día 7 de agosto del corriente año, una vez firme la sentencia, con los demás pronunciamientos del caso y que Dios recoja su alma."

Contra esa sentencia interpuso el acusado recurso de apelación que le fué admitido, habiendo presentado antes declaración o pliego de excepciones que fué firmado por el juez de Derecho, y que copiado a la letra dice así:

"En la Corte de Distrito de Humacao.   El acusado Pedro Díaz *alias* Martillo, por medio de su defensor, Don Ulpiano Valdés Cajas, opone excepciones a la decisión del tribunal en la forma siguiente:

"1. Por el caso tercero del artículo 294 de la Ley de Enjuiciamiento Criminal.

"Con fecha 6 de mayo de 1903, presentó el letrado defensor del acusado escrito al tribunal, proponiendo como prueba para el acto del juicio, certificación del acta del juicio oral de la causa seguida contra Don Luis Delgado y otros por delito de perjurio, certificación de la sentencia recaída, así como del veredicto pronunciado por el jurado, de cuya certificación se desprendía la inocencia del acusado.

Dicha prueba fué admitida por el tribunal y declarada pertinente por providencia del mismo día y se ordenó por el mismo la expedición de las certificaciones solicitadas.

"En el acto del juicio por jurado de la causa seguida contra el acusado Pedro Díaz, al hacer uso el letrado defensor de esta prueba, fué negada por el Sr. Juez Presidente, no obstante haber sido admitida y librada la certificación por el Sr. Secretario que es (*) un funcionario que tiene facultad para expedir esta clase de documentos.

"En dichas certificaciones consta que los testigos Pedro Astacio y Martín Julbe al declarar al día siguiente de la muerte de Octavio Reyes, no hicieron al Sr. Juez de Paz que instruía el sumario, Don Francisco López Cepero, acusación alguna contra el acusado Pedro Díaz, y que Don Andrés Crosas, nombrado por el Hon. Attorney juez especial para la averiguación del delito, manifestó que no creía conveniente decretar el arresto de Pedro Díaz.

"Es indudable que la no admisión de esta prueba, ha causado al acusado Pedro Díaz, gravísimo perjuicio, toda vez que iba encaminada a impugnar la veracidad de los dos testigos de más cargo o sean Astacio y Julbe, que al preguntársele, de acuerdo con el artículo 245 del Código de Enjuiciamiento Criminal, por qué no concordaban sus actuales manifestaciones de haber visto al acusado disparar contra Octavio Reyes, con sus declaraciones prestadas en la causa seguida por los sucesos ocurridos en Humacao la noche del 26 de agosto de 1902 en cuya noche fué muerto el Reyes, no hubieran podido dar razón de su dicho, puesto que en el sumario instruído y en el que declararon los testigos Astacio y Julbe, se investigaba quién era el autor o autores de la muerte de Octavio Reyes y de los demás que murieron y en la declaración por ellos rendida entonces, no hicieron manifestación alguna contra Pedro Díaz, no obstante haber declarado en el acto del juicio haber sido testigos presenciales de la muerte de Octavio Reyes.

"Y tan seguro es que sus anteriores manifestaciones no concuerdan con las declaraciones prestadas en el acto del juicio, que en el documento no admitido por el tribunal, se lee también 'que el Hon. Don Andrés Crosas no arrestó a Pedro Díaz, *alias* Martillo, por no creerlo conveniente' debiendo advertirse que dicho Sr. Crosas, fué designado por el Honorable Attorney juez especial para la averiguación de todos los sucesos ocurridos en Humacao en la noche del 26 de agosto de 1902, y que ante él declararon los testigos Astacio y

Julbe, y si éstos hubiesen acusado a Martillo, ¿cómo el Juez Crosas no iba a creer en la conveniencia de dictar mandamiento de arresto contra un acusado de tan grave delito como es el asesinato?

"2. *Por el caso 3 del artículo 296 del Código de Enjuiciamiento Criminal.*

"El número 7 del artículo 303 del Código de Enjuiciamiento Criminal,(*) autoriza al acusado a solicitar nuevo juicio, una vez declarado culpable, pero antes de pronunciarse el fallo, cuando descubriere nuevas pruebas que pudieran favorecerle, las cuales, a pesar de la actividad razonable no le hubiera sido posible descubrir y aducir en la vista de la causa. En el presente caso, así consta bajo juramento del abogado de Martillo, a quien se le exigió, que después de declarado culpable y antes del pronunciamiento del fallo, descubrió nuevas pruebas que le favorecían, las que a pesar de la actividad y diligencias hechas por el acusado, no le fué posible descubrir antes del juicio, y por tanto no pudo aducir en la vista de la causa.

"Se ha cumplido estrictamente por parte del acusado con el precepto terminante del artículo 303, en su inciso 7, pues se presentaron las declaraciones juradas ante el secretario de la corte de distrito que es funcionario que tiene facultad para tomar juramentos, de cinco testigos, y son tan importantes estas declaraciones y de tan grande trascendencia para los efectos del fallo, que indudablemente al prescindir de ellas, se infringe abiertamente el artículo 296 del Código de Enjuiciamiento Criminal por el que se tomó excepción.

"Entre las declaraciones que no fueron admitidas, figura la de José Martínez Espino que asegura que en la noche del suceso (26 de agosto) al sentir unos cuantos disparos ordenó el cierre de su establecimiento y dejó una puerta junta donde se quedó, vió venir un hombre quejándose y al pasar por su lado conoció que era Octavio Reyes Guzmán y pocos pasos después lo vió caer y que en la calle que vive no se hizo disparo alguno. Manifestación que echa por tierra las declaraciones de los dos testigos de cargo más importantes, o sean Pedro Astacio y Martín Julbe que dijeron que Pedro Díaz, *alias* Martillo, estaba en la casa, digo en la esquina de Juan Martínez Espino, y salió en el momento que los dos iban con el interfecto disparando el tiro que causó la muerte de Reyes. Figuran también las declaraciones de Feliciano Doble y Juan Guzmán que manifiestan que se encontraron en la noche del 26 de agosto en los sucesos ocurridos frente a la botica y en donde se hicieron multitud de disparos y que allí se encontraba el Reyes Guzmán, al que oyeron exclamar

'¡ay, me han herido!' lo que prueba evidentemente que la herida la recibió Reyes en aquel sitio, no en el que se dice por Astacio y Julbe, y esto viene a ser corroborado por las declaraciones de José·C. Peña y Luis Castro que tampoco fueron admitidas y en las que manifiestan haber encontrado al interfecto frente a la casa de Don Ramón Piñol con las manos en el pecho y al preguntarle qué (*) ocurría exclamó "¡me han matado!" Humacao, junio 10 de 1903. Lcdo. Ulpiano Valdés. Vo. Bo., Salvador Fulladosa. Juez Comisionado por el Honorable Attorney General en esta causa. Es copia, Enrique Lloreda, secretario.''

Dicho pliego de excepciones no se ajusta al precepto del artículo 299 del Código de Enjuiciamiento Criminal, según el cual debía contener solamente las pruebas que fueran necesarias para exponer los puntos de derecho en que se basan las excepciones y el juez de derecho, lejos de firmarlo, debió, cumpliendo con lo que el mismo artículo previene, eliminar todos los demás extremos contenidos en dicho pliego. No lo hizo así, pues admitió el pliego de excepciones, no obstante contener apreciaciones extrañas al mismo y que son de la competencia judicial. Hay un extremo en ese pliego que atendida la relación suscinta del acta del juicio, en la cual no consta lo que declararon Pedro Astacio y Martín Julbe, tiene alguna importancia y es el relativo a que Astacio y Julbe dijeron que Pedro Díaz, *alias* Martillo, estaba en la esquina de la casa de Juan Martínez Espino y salió en el momento en que los dos iban con el interfecto, disparando el tiro que causó la muerte de Reyes Guzmán.

En el recurso de apelación interpuesto se alegan como fundamentos los siguientes:

1. Que el veredicto y fallo son contrarios a derecho, pues en el acto del juicio solamente se probó que Reyes Guzmán fué muerto por un disparo de arma, y si bien es cierto que los testigos Pedro Astacio, Martín Julbe y José Aponte manifestaron que vieron a Pedro Díaz, *alias* Martillo, cuando disparó contra Reyes Guzmán, ninguno de ellos declaró que Pe-

dro Díaz obrara con premeditación o alevosía, ni que estuviera en acecho de Reyes Guzmán para darle muerte, por lo que faltando como faltan las circunstancias que califican el delito de asesinato en primer grado, según el artículo 201 del Código Penal, y faltando (*) también la malicia y premeditación necesarias para que exista asesinato, no ya de primer grado sino de segundo, es claro que el jurado no pudo pronunciar el veredicto que dió contra Pedro Díaz, *alias* Martillo, ni el tribunal condenarlo a muerte, sin que pueda alegarse que el veredicto y fallo se basan en la declaración de Olalla Ortiz, querida del interfecto, la que manifestó que éste en la agonía le dijo que quien lo había matado había sido el acusado Pedro Díaz, pues tal testigo no fué presencial, y además, nada expuso sobre el modo y forma como se dió la muerte a Octavio Reyes.

2. Ser el veredicto y fallo contrarios a las pruebas, pues aunque ante el jurado declaron Pedro Astacio y Martín Julbe en el sentido de que yendo ambos acompañado del interfecto, se les presentó el acusado y disparó contra ellos, hiriendo y dando muerte a Octavio Reyes, esas declaraciones están destruídas por la de Don Luis Delgado que manifestó haber visto al interfecto frente a la botica del Sr. Julbe, tomando parte en los sangrientos sucesos de la noche del 26 de agosto, y allí presenció cuando fué herido, estando también destruídas por otros testigos que manifestaron que cuando se desarrollaban dichos sucesos vieron al acusado salir de su casa; y claro está por tanto que no teniendo el don de la ubicuidad, y encontrándose en su casa a la hora en que fué herido Octavio Reyes, no pudo ser autor del delito de que se le acusa.

La representación del acusado ante esta Corte Suprema alegó como motivos del recurso los siguientes:

1. Infracción de los artículos 11 en su número 1 y 448 en su número 2, ambos del Código de Enjuiciamiento Criminal, toda vez que presentada denuncia jurada contra el acusado por Don Francisco Bussó Cabrera en 25 de noviembre

de 1902, por delito de asesinato cometido en la persona de Octavio Reyes Guzmán, tres meses antes o sean el 26 de agosto, se acordó la prisión del mismo en la propia fecha (*) en que se presentó la denuncia, y habiéndose formulado acusación en 29 de diciembre siguiente por delito de asesinato en primer grado, cuya acusación negó Pedro Díaz, fué señalado para la celebración del juicio el 16 de febrero del año siguiente, suspendiéndose sin causa alguna justificada, contra lo que reclamó su defensor, interesando se celebrara el juicio ante el jurado que estaba reunido o por otro que al efecto se convocara, reclamación que fué desatendida, señalándose por providencia de 18 de abril el día 18 de mayo para la celebración del juicio, esto es, después de transcurridos 120 días a contar desde la presentación de la acusación y cuando la causa por tanto debió ser sobreseída.

2. La excepción autorizada por el caso 3 del artículo 294 del Código de Enjuiciamiento Criminal, toda vez que habiéndose traído a la causa testimonio del acta del juicio celebrado contra Don Luis Delgado y otros por perjurio, en cuyo juicio declaró el Juez de Paz Don Francisco López Cepero, pero que en la investigación que practicara sobre los sucesos ocurridos en Humacao en la noche del 26 de agosto, declararon Pedro Astacio y Martín Julbe, quienes no hicieron cargo alguno contra Pedro Díaz, *alias* Martillo, como también se recibió declaración a Don Andrés B. Crosas, juez especial nombrado para la investigación de aquellos sucesos, al entonces capitán de la Policía Insular, Mr. Wilcox, y a otros, el tribunal no obstante, al solicitar el defensor que se hiciera lectura de dicha acta ante el jurado, como el Fiscal se opusiera a ello, declaró con lugar la oposición, rechazando así una prueba perfectamente ajustada a lo prescrito en el artículo 245 del Código de Enjuiciamiento Criminal, pues esa prueba venía a demostrar la poca veracidad con que se habían producido en el acto del juicio Astacio y Julbe, cuya falsedad o contra-

dicción se demostraba también con el testimonio de la declaración del juez especial Sr. Crosas.

3. La excepción autorizada por el caso 3. del artículo 296 del Código Enjuiciamiento Criminal, pues habiendo (*) solicitado el acusado nuevo juicio en ejercicio del derecho que le acuerda el número 7 del artículo 303, por haber descubierto nuevas pruebas que le favorecían y justificaban su inocencia y que no había podido utilizar en el acto del juicio a pesar de la actividad razonable desplegada, le fué denegada tal pretensión, no obstante su solicitud jurada y las declaraciones también juradas de testigos tan importantes y presenciales como José Martínez Espino, dueño de la casa en cuya esquina aseguran Julbe y Astacio se ocultaba Pedro Díaz cuando disparó contra Reyes, y Feliciano Doble, Juan Guzmán y otros que aseguran haber visto venir a Octavio Reyes de la botica ya herido, exclamando "¡ay, me han matado!"

El Fiscal estimó que ni el veredicto ni el fallo eran contrarios a derecho y a las pruebas, y en su virtud impugnó el recurso, solicitando se declare sin lugar.

Habiendo sido expuesto cuanto resulta de las copias enviadas a este tribunal para la resolución del recurso y consignados los motivos en que éste se funda, alegados tanto ante el tribunal de Humacao como ante esta Corte Suprema, toca ahora examinar la procedencia o improcedencia de esos motivos.

Para obtener la celebración de un nuevo juicio alega el acusado que el veredicto fué contrario a derecho y a las pruebas. Consta que en el juicio declararon como testigos de cargo Don Fernando P. González, Don Pablo Font Martelo, Olalla Ortiz, Rafael Martínez, Francisco López Cepero Náter, José Aponte, Pedro Astacio y Martín Julbe; y como testigos de la defensa los expresados Pedro Astacio, Martín Julbe y Don Francisco López Cepero Náter, Octavio Ramírez, Juan Martínez Espino, Luis Berríos Borges y Luis Delgado Carrión; pero en el acta del juicio no aparece lo que declarara

cada uno de esos testigos, y si bien en el pliego (\*) de excep-
ciones redactado en la forma que se deja expuesta, se consigna
que los dos testigos de cargo más importantes, o sean Pedro
Astacio y Martín Julbe, dijeron que Pedro Díaz estaba en la
esquina de la casa de Juan Martínez Espino y salió en el
momento en que los dos iban con el interfecto disparando
el tiro que causó la muerte de Reyes, no consta en ese pliego
lo que declararan los demás testigos, especialmente José
Aponte, que según el escrito de apelación interpuesto ante el
tribunal de Humacao, fué también testigo presencial, y Olalla
Ortiz que según ese mismo escrito de apelación, recibió de
los labios de su querido agonizante la manifestación de que
lo había matado Pedro Díaz, *alias* Martillo. Esas cuatro
declaraciones combinadas con las de los demás testigos de
cargo y de descargo que declararon ante el jurado, llevaron
a la conciencia de éste el convencimiento de la culpabilidad
de Pedro Díaz y como esta Corte Suprema ignora en su deta-
lle diversas declaraciones prestadas en el juicio, no puede
afirmar que el veredicto fuera contrario a derecho o a las
pruebas. Al acusado toca traer justificación cumplida de se-
mejante alegación mediante declaración de excepciones, según
el precepto del artículo 299 del Código de Enjuiciamiento
Criminal; y esa justificación no ha venido en forma debida,
por lo que es de presumirse que el jurado pronunció su vere-
dicto con arreglo a derecho y a las pruebas practicadas.

No procede, pues, la celebración del nuevo juicio con arre-
glo al número 6 del artículo 306 del Código de Enjuiciamiento
Criminal y tampoco procede con arreglo al número 7 del
mismo artículo, o sea por haber el acusado descubierto nue-
vas pruebas que no le fué posible descubrir y aducir en la vista
de la causa, a pesar de haber desplegado la mayor actividad
razonable.

Ciertamente que el letrado defensor del recurrente a vir-
tud de pregunta del tribunal, juró que había practicado todas
las diligencias necesarias para conseguir pruebas y que (\*)

440–442

había tenido conocimiento de las nuevas que había descubierto después de celebrarse el juicio; pero esa declaración jurada no era bastante al fin apetecido, pues aquél no expresó cuáles eran las diligencias que practicó con el fin de demostrar a juicio del tribunal la mayor actividad razonable para descubrir y aducir en la vista de la causa las nuevas pruebas de que luego ha intentado valerse.

Llama la atención que el letrado, al solicitar nuevo juicio, propusiera como testigos que habían de declarar en favor del acusado, a Don Juan y Don José Beltrán Casañas y a Don José Martínez Espino, y sin embargo, al producir las pruebas no se acordó de los dos primeros, sino únicamente del tercero, el cual declaró, como también Feliciano Doble Pou, Juan Guzmán, Luis Castro y José Cintrón Peña, sin que los cuatro últimos fueran citados en el escrito interesando la celebración de nuevo juicio.

Aparece ignorado el motivo de que no fueran producidas las declaraciones de los dos primeros, y una presunción lógica parece indicar que sus testimonios no habían de ser favorables al acusado, pues de serlo, no se hubiera prescindido de ellos.

Los cinco testigos que declararon eran todos vecinos de Humacao; no hay la más ligera indicación de que estuvieran ausentes desde que se perpetró el delito en 26 de noviembre de 1902 hasta que fué celebrado el juicio en 18 de mayo del año siguiente, y tampoco ha manifestado el letrado cómo fué que vino a descubrir que las declaraciones de esos testigos podían ser favorables a Pedro Díaz, *alias* Martillo.

Es en verdad muy inverosímil que Pedro Díaz que compareció ante el tribunal de Humacao en 13 de enero de 1903, en cuya fecha negó la acusación contra él formulada, y que su letrado que desde el día 20 del mismo mes hizo su primera moción en la presente causa, no hubieran descubierto todas las pruebas favorables al acusado antes de celebrarse el juicio, para cuyo acto se señaló el día 18 de mayo, si hubieran (*)

puesto en juego la mayor actividad razonable; y que bastara el anuncio de un veredicto de culpabilidad para que a los dos días descubrieran las nuevas pruebas en que fundan la petición de nuevo juicio.

Con razón, pues, el tribunal de Humacao denegó la celebración del nuevo juicio solicitado por la representación del acusado.

Ni cabe alegar como se alega que hayan sido infringidos los artículos 11 en su número 1 y 448, en su número 2 del Código de Enjuiciamiento Criminal, pues Pedro Díaz fué detenido en 25 de noviembre de 1902, o sea en la misma fecha en que fué denunciado como autor del delito, y la acusación se presentó contra él en 29 de diciembre siguiente, señalándose para la celebración del juicio el día 16 de febrero del año siguiente; pero como no pudiera tener lugar por falta de tiempo suficiente para celebrarlo, por tener otras ocupaciones el tribunal, según confiesa la misma representación del acusado, hubo de aplazarse el acto para el día 18 de mayo, y si no se señaló una fecha anterior, sería porque el jurado no ejerce sus funciones permanentemente, sino en tiempos determinados.

Hubo, pues, justa causa para que el juicio contra Pedro Díaz no se celebrara dentro del término de 120 días a contar desde la presentación de la acusación, y por tanto, no procede en derecho el sobreseimiento del proceso, el que tampoco fué solicitado por el acusado ante el tribunal inferior, reconociendo así que no había causa justa para semejante pedimento.

Resta por examinar el motivo del recurso fundado en el número 3 del artículo 294 del Código de Enjuiciamiento Criminal, por haber denegado el tribunal la lectura del acta del juicio por jurado contra José Moreno, Luis Delgado, Santiago Martínez y Manuel Santori por el delito de perjurio, con cuya denegatoria, según se alega, se privó al acusado del derecho que le otorga el artículo 245 del código citado.(*)

Ese artículo dice textualmente: "También puede ser im-

pugnada la veracidad de un testigo por medio de prueba que demuestre, que en ocasiones anteriores ha .hecho manifestaciones que no concuerdan con su actual declaración; pero antes de hacerlo se le referirán dichas manifestaciones, con expresión de la época, lugares y personas que hubieren estado presentes al hacerlas, y se le preguntará si dichas manifestaciones fueron hechas por él, permitiéndosele que las explique, si contestare afirmativamente. Si las manifestaciones fueren escritas se enseñarán al testigo antes de interrogarle acerca de ellas.''

Del texto legal transcrito se desprende que el acusado pudo impugnar la veracidad de los testigos Pedro Astacio y Martín Julbe demostrando que anteriormente habían hecho manifestaciones que no concordaban con las declaraciones que acababan de prestar en el juicio, pero antes de acudir a aquella prueba, era necesario que a esos testigos se les refirieran dichas manifestaciones con expresión de la época, lugares y personas que estuvieron presentes al hacerlas, y se les preguntara si tales manifestaciones fueron hechas por ellos, explicando en caso afirmativo el motivo de su proceder y mostrándoles sus manifestaciones, en el caso de ser escritas, antes de interrogarles sobre ellas.

No consta que el letrado de Pedro Díaz, después de haber prestado Astacio y Julbe sus declaraciones en la presente causa, impugnara la veracidad de las mismas refiriéndoles las manifestaciones contrarias que anteriormente hubieron hecho para que contestaran sobre la realidad de las mismas y en caso afirmativo las explicaran; apareciendo solamente del acta del juicio que Julbe negó haber declarado ante el juez de paz sobre el hecho de que se trata, y que respecto de Astacio, el Fiscal se opuso al interrogatorio fundado en el artículo 244 del Código de Enjuiciamiento Criminal, habiendo tomado el Fiscal excepción, lo que demuestra que tal interrogatorio fué hecho, pues de no ser así, no hubiera sido (*) el Fiscal sino el defensor de Díaz quien hubiera tomado excepción.

Aun más, en el acta del juicio por perjurio consta que Don Francisco López Cepero Náter manifestó que Astacio y Julbe, al declarar en la causa sobre los sucesos de la botica, no habían hecho acusación alguna contra Pedro Díaz por asesinato; pero se ignora si en esa causa declararon los testigos Astacio y Julbe y si por tanto tuvieron oportunidad de ser examinados sobre la muerte del desgraciado Reyes Guzmán. Este testigo Don Francisco López Cepero Náter declaró también en la presente causa, y por tanto el defensor de Pedro Díaz tuvo oportunidad de preguntarle sobre las manifestaciones que en su caso hicieran Astacio y Julbe al declarar en la causa sobre los sucesos de la botica, aparte de que no cabe afirmar que no fuera interrogado en tal sentido, pues ni.en el acta del juicio ni en el pliego de excepciones consta la declaración de López Cepero.

En cuanto a la declaración de Don Andrés Crosas, obrante en el acta del juicio por perjurio, no podía traerse a esta causa para impugnar la veracidad de los testigos Astacio y Julbe, pues Crosas, al ser preguntado en aquel juicio por la razón de no haber decretado el arresto de Pedro Díaz en vista de la acusación que se le hacía por asesinato, contestó que porque no lo creía conveniente y tal contestación lejos de demostrar que Astacio y Julbe no acusaron ante Crosas a Pedro Díaz, indica que fué acusado, pudiendo partir muy bien de Astacio y Julbe la acusación, por más que así no se consigne.

De todos modos, si el defensor de Pedro Díaz quería demostrar que los testigos Pedro Astacio y Martín Julbe no habían hecho acusación alguna contra Pedro Díaz en la investigación que de los sucesos de la botica hizo el Juez de Paz Don Francisco López Cepero Náter, no debió ir por esta prueba al acta del juicio por perjurio, sino a las diligencias instruídas en averiguación de los sucesos de la botica.(\*) Trayendo al presente juicio testimonio de las declaraciones prestadas por Astacio y Julbe en las diligencias instruídas por Don Francisco López Cepero Náter, declaraciones, que

dicho sea de paso, fueron prestadas o no, pues Julbe ha negado en el presente juicio haber declarado ante dicho juez de paz y se ignora lo que haya dicho Astacio sobre el particular, hubiera podido el defensor de Pedro Díaz obtener del tribunal que se leyeran esas declaraciones a Julbe y Astacio antes de interrogarles acerca de ellas.

El jurado, pues, no tenía necesidad de que en el acto del juicio se hiciera lectura del acta del juicio por perjurio, pues esa acta no le hubiera dado luz alguna para apreciar los mayores o menores grados de veracidad de los testigos Pedro Astacio y Martín Julbe.

En resumen, no aparece que el veredicto del jurado sea contrario a derecho o a las pruebas, ni que se empleara la mayor actividad razonable para descubrir o aducir oportunamente en la vista de la causa las pruebas suministradas después de pronunciado dicho veredicto, como tampoco aparece que faltara justa causa para el aplazamiento del juicio hasta después de transcurridos 120 días después de formulada la acusación y que fuera privado el acusado del derecho que tenía de impugnar la veracidad de los testigos de cargo. El tribunal, pues, debe confirmar la sentencia que dictó el tribunal de Humacao en 25 de mayo del año próximo pasado, con las costas a cargo del recurrente.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Sulzbacher y MacLeary.

El Juez Asociado Sr. Figueras no formó tribunal en la vista de esta causa.(*)