EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN RUIZ, acusado y apelante.

Núm. 8730.—*Sometido:* Mayo 7, 1941. *Resuelto:* Mayo 20, 1941.

640

*Frank Torres,* abogado del apelante; *Hon. Procurador General George A. Malcolm y R. A. Gómez, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Ramón Ruiz, el apelante, y Marcelino Piazza fueron acusados conjuntamente por un delito de asesinato en primer grado, cometido al dar muerte ilegal a Pedro Serrano González en 11 de julio de 1936. Piazza fué arrestado el 4 de

agosto de 1936 y Ruiz lo fué el 19 de septiembre del mismo año. El fiscal radicó acusación contra ambos en enero 13 de 1937 y se señaló el juicio para el día 30 de marzo de 1937. En marzo 23 de 1937 los acusados solicitaron el archivo y sobreseimiento por infracción al artículo 448 del Código de Enjuiciamiento Criminal, allanóse el fiscal y la corte lo decretó, sin perjuicio de que el fiscal pudiese presentar nueva acusación.

En 29 de marzo de 1937 el fiscal radicó nueva acusación, la que fué leída a los acusados el 2 de abril, señalándose la vista para el 7 de junio de 1937, fecha en que fué celebrada.

El día 1 de junio, seis días antes de la fecha señalada para la vista, los acusados solicitaron el archivo y sobreseimiento de la nueva acusación, basándose en que desde la fecha del arresto de los acusados hasta la fecha de radicación de la nueva acusación, habían transcurrido más de 120 días y en que la orden de sobreseimiento de la primera acusación "no autoriza específicamente al fiscal para radicar nueva acusación." Dicha moción fué declarada sin lugar, y visto el caso el jurado dictó veredicto absolviendo a Piazza y declarando a Ruiz, el apelante, culpable de asesinato en segundo grado. La corte le condenó a la pena de 12 años de presidio.

Sostiene el acusado apelante que la corte sentenciadora erró al denegar la moción de archivo y sobreseimiento; al no inhibirse el juez que presidió la vista; al usurpar por medio de sus instrucciones las prerrogativas del jurado; y al denegar la moción de nuevo juicio. Alega además que el veredicto es contrario a la prueba y a derecho.

█ █ El primer señalamiento carece en absoluto de méritos. Sobreseída la primera acusación, por haber sido radicada después de vencido el término de sesenta días desde la fecha de la detención de los acusados, quedó el fiscal en libertad para poder formular una nueva acusación, por tratarse de un delito grave *(felony)*, a tenor de lo dispuesto en el artículo 452 del Código de Enjuiciamiento Criminal, sin que fuera necesaria la autorización previa y expresa de la

corte. *El Pueblo* v. *Pagán*, 23 D.P.R. 828. Habiendo sido radicada la segunda acusación el 29 de marzo de 1937 y celebrado el juicio el 7 de junio del mismo año, es evidente que las disposiciones del artículo 448 del Código de Enjuiciamiento Criminal fueron estrictamente cumplidas, toda vez que el término de 120 días dentro del cual ha de celebrarse el juicio, debe contarse desde la presentación de la acusación y no desde la fecha del arresto, como erróneamente pretende el apelante.

Examinemos el incidente en que se basa el segundo señalamiento. De las instrucciones dadas por el juez al jurado, aparece que el acusado Maximino Piazza se presentó en la cárcel del distrito en la noche del crimen, diciendo que él había matado a Serrano, y que al siguiente día, que era un domingo, por la mañana, Piazza fué llevado por dos detectives a presencia del Juez de Distrito, Sr. Todd, Jr., por no haber en Ponce en aquel momento ningún otro juez o funcionario judicial que pudiera fijarle fianza, y dicho juez ordenó su arresto y le fijó fianza para su libertad provisional. Aparece también, que habiéndole manifestado al juez los detectives que Piazza había prestado una declaración, el juez le tomó el juramento correspondiente.

Ninguno de los hechos y circunstancias que acabamos de relatar incapacitaron al Juez Todd, Jr., para presidir la vista de la causa, ni le impusieron la obligación de inhibirse. El artículo 23, apartado 3, del Código de Enjuiciamiento Civil, impone al juez la obligación de inhibirse cuando hubiere sido abogado o consultor de cualquiera de las partes en el pleito o procedimiento pendiente ante su corte "o fiscal en una investigación o proceso criminal donde los hechos sean los mismos que en el pleito sometido a su resolución."

De acuerdo con los artículos 12 y 13 del Código de Enjuiciamiento Criminal, los jueces de las cortes de distrito son magistrados "con autoridad para dictar orden de arresto contra una persona acusada de delito público." El artículo 44a del mismo código provee que "en toda orden de arresto

se fijará la cuantía de la fianza, la cual podrá hacerse efectiva y admitirse por cualquier juez''; y los artículos 32, 33 y 44 reconocen el derecho que tiene toda persona acusada de delito grave a que se le lleve sin demora a la presencia de un juez y a que éste le fije fianza.

Resolvemos que las actuaciones del Juez Sr. Todd, Jr., se ajustaron al más estricto cumplimiento de sus deberes como juez; que en ningún momento actuó como fiscal; y que no erró en manera alguna al presidir la vista de esta causa.

█ Para sostener la alegada usurpación por el juez de las funciones del jurado, el apelante se limita a señalarnos en su alegato tres párrafos de las instrucciones dadas por el juez, en los cuales éste hace un resumen de lo declarado por varios testigos, pero no nos dice en qué consiste, a su juicio, la alegada usurpación. Hemos estudiado dichos párrafos en relación con el cuidadoso estudio que hemos hecho de toda la evidencia, y encontramos que la exposición hecha por el juez está sostenida por el récord y es clara, justa y razonable. Limitóse el juez a exponer lo declarado por los testigos de una y otra parte, sin exponer opinión alguna, y diciendo expresamente al jurado que eran ellos a quienes incumbía ''determinar en cuanto a la credibilidad de toda prueba.'' No hubo error.

█ La moción de nuevo juicio, de cuya denegación se queja el apelante, se basó en el primero y tercero de los señalamientos que ya hemos discutido y desestimado y en el alegado descubrimiento de nuevas pruebas consistentes en las declaraciones de cinco testigos, al efecto de que ellos oyeron a Maximino Piazza cuando dijo que él había matado a Serrano.

El artículo 303 del Código de Enjuiciamiento Criminal y la jurisprudencia exigen, para que una moción de nuevo juicio basada en el descubrimiento de nuevas pruebas pueda prosperar, que se demuestre bajo juramento que se practicaron las diligencias necesarias para conseguir dichas pruebas antes del juicio, y que se especifique, además, cuáles fueron las diligencias practicadas, a fin de que el tribunal pueda apre-

ciar si el acusado empleó una actividad razonable para descubrir tales pruebas. *El Pueblo* v. *Díaz* (*a*) *Martillo*, 5 D.P.R. 202; *El Pueblo* v. *Milán*, 7 D.P.R. 455; *El Pueblo* v. *Otero*, 11 D.P.R. 343; *El Pueblo* v. *Viader*, 23 D.P.R. 724, y *El Pueblo* v. *Mauleón*, 50 D.P.R. 568. La moción radicada en este caso no cumple con el indicado requisito. El acusado no ha hecho alegación alguna tendiente a convencer a la corte sentenciadora de que le fué imposible conseguir la prueba ofrecida como nueva, antes del juicio.

La nueva prueba ofrecida en apoyo de la moción de nuevo juicio era acumulativa, pues versaba sobre hechos relatados por otros testigos en el acto del juicio. Cuando la prueba es acumulativa la corte tiene discreción para su admisión. Y no se ha demostrado que la corte haya abusado de esa discreción. *El Pueblo* v. *Lebrón*, 23 D.P.R. 658; *El Pueblo* v. *Pujols*, 23 D.P.R. 881; *El Pueblo* v. *Quiles*, 41 D.P.R. 915. Además, no estando jurada la moción de nuevo juicio, la corte procedió correctamente al denegarla, de acuerdo con lo resuelto en *El Pueblo* v. *Muñoz*, 25 D.P.R. 207.

Alega el apelante que el último señalamiento—"el veredicto es contrario a derecho y a la prueba"—está sostenido por las declaraciones de los detectives Modesti y Díaz Casiano, a quienes Piazza confesó haber cometido el crimen.

La prueba ofrecida por el fiscal para sostener la acusación fué la siguiente:

El doctor que practicó la autopsia del cadáver de Pedro Serrano declaró que Serrano falleció a consecuencia directa de una herida de bala. Ésta penetró en la región sigomática derecha y fué a alojarse en la masa encefálica.

Cosme Andújar y Santiago Serrano, quienes trabajaron con el acusado, identificaron como de la propiedad de éste el revólver calibre 32 que fué usado para dar muerte al interfecto.

Eleuterio Hernández, agente del Negociado de Investigaciones Criminales, declaró que examinó el revólver, calibre 38 que fué encontrado en casa del acusado Ruiz, debajo

de la almohada de su cama, y que fué imposible determinar la fecha en que se hicieron los últimos disparos; que examinó el otro revólver que le entregó el fiscal, calibre 32, y pudo comprobar que había sido disparado y que la bala con que se mató a Serrano fué disparada con ese revólver. Declaró además que practicó las pruebas de la parafina en ambos acusados el 13 de julio de 1936, dos días después del crimen; que ambos dieron una reacción positiva, lo que demostraba que habían disparado o que sus manos habían estado muy cerca de un arma de fuego al disparar; que Ramón Ruiz reveló un punto grande en el dedo del corazón de la mano derecha, lo que demuestra sin lugar a dudas que había disparado un arma.

Antonio Colón Sierra, cuñado del acusado Ruiz y concubino de la madre de Piazza, identificó el revólver como propiedad de Ruiz, y declaró que nunca le vió revólver a Piazza; que éste no tenía dinero para poder comprar armas; que Ruiz le encargó le buscara un abogado para defender a Piazza y que él le acompañó donde el Lic. Agustín Font; que en esos momentos Piazza había sido ya arrestado y Ruiz estaba en observación; que en su presencia Ruiz le entregó al abogado Font un cheque por $100 por la defensa de Piazza; que entre Pedro Serrano y Ramón Ruiz existían disgustos personales; que Pedro Serrano y Piazza eran como dos hermanos; que Ramón Ruiz estuvo enfermo varios días en el hospital, de donde salió el sábado, y por la noche de ese mismo día fué el crimen.

Guillermo Levy declaró: que tiene diez años de edad, que ha asistido a la escuela y sabe leer y escribir; que conoce a Ruiz y a Piazza y conocía al interfecto; que vió quien mató a Pedro Serrano y que fué Moncho Ruiz, el acusado; que él venía con Serrano y Serrano siguió para arriba, para doblar el callejón San Juan; que él siguió por el callejón, y cuando llegó Serrano el declarante se estaba lavando los pies en la pluma que queda como a cinco metros de la casa de Ramón Ruiz; que Ruiz salió en ropas menores, por el portón, y

le disparó a Serrano por el lado derecho, hiriéndolo en las sienes; que Ruiz le disparó a Serrano en el momento en que éste tocaba a su puerta; que en el momento del disparo no vió allí a Piazza, quien vino al poco rato; que vió y oyó cuando Ruiz le dió el revólver a Piazza y le dijo: "Corre, bótalo y di que fuiste tú y entrégate"; que vió caer a Serrano herido y que cuando llegó Piazza ya Serrano había caído herido y estaba agonizando, abriendo y cerrando los ojos; que después que cogió el revólver, Piazza siguió para adentro de la tienda y siguió para arriba; que sabe que es malo imputarle a una persona haber matado a otra; que está seguro que fué Ruiz quien mató a Serrano porque lo vió con sus propios ojos; que Miguel Ruiz, el hermano del acusado, lo llevó a la oficina del abogado Font y le hizo una oferta para que le hiciese una declaración distinta a la que había dado al fiscal; que Miguel Ruiz le compró una mudita de ropa; que en la oficina de Font lo llevaron a un cuarto donde había un escudo con revólveres y puñales y una calavera; que Font dijo: "Que haga una carta . . .," pero que no la hicieran allí, negándose Font a hacer la declaración; que Miguel Ruiz se lo llevó adonde él vivía y a las siete se apareció con una botella de vino con ron y le dió a tomar y le ofreció para que hiciese la declaración la mitad de la Gruta, una victrola, seis pesos, ropa y zapatos; que estuvo una temporada almorzando y comiendo en la Gruta hasta que se encontró con el Fiscal Pierluisi; que la Gruta es propiedad del acusado; que antes del juicio Miguel Ruiz quería mandarlo para otro pueblo y el fiscal se lo tuvo que llevar a su casa; que lo que declaró al Fiscal Pérez Marchand es la verdad y que es lo mismo que declara al jurado. Sometido a un fuerte y minucioso contrainterrogatorio, el testigo ratificó su declaración en todos sus detalles; y al ser preguntado por el fiscal si tenía algún interés en que se castigara a uno de los dos acusados o a los dos, respondió: "Que castiguen a Moncho Ruiz, porque fué el que mató."

Humberto Alvarez declaró: que en compañía de Miguel Ruiz llevó al muchacho Guillermo Levy a la oficina del Lic. Font y lo dejó allí con Miguel Ruiz y la señora Peña; que él estaba presente cuando Miguel Ruiz le hizo escribir al muchacho una carta diciendo que Ramón Ruiz no era el que había matado; que la carta se la dictó Miguel Ruiz; que vió cuando le dieron a beber al muchacho una cuarta de vino; que no oyó que le hicieran ofrecimientos.

Eugenia Peña, esposa de Humberto Alvarez, corroboró en todas sus partes las declaraciones de su marido y de Guillermo Levy.

Carlos Ramis, Cabo de Penales, declaró que en la noche del crimen, estando él de servicio, se presentó allí Maximino Piazza; que cuando él le preguntó "¿Qué te pasa?", Piazza contestó: "Pues que mataron a un familiar y quiero decírselo a él," refiriéndose a un tío suyo, guardia de Penales; que después dijo que era él quien había matado; que notó que Piazza había tomado licor, porque primero decía una cosa y luego otra.

La prueba del acusado:

Luis Modesti y Pablo Díaz Casiano, detectives, declararon sobre la investigación practicada por ellos al tener noticias de la muerte de Serrano y sobre las manifestaciones hechas por Piazza, de que él había sido el matador de Serrano.

El acusado Maximino Piazza declaró: que en la noche del suceso estuvo en un baile hasta las diez, encontrándose en estado de embriaguez; que al llegar al callejón "San Juan," sintió un disparo, y viró, y cuando llegó encontró a Serrano muerto; que entonces Ramón Ruiz lo llamó y le dijo: "Maximino, ven acá, fíjate en el estado en que estoy operado; tengo ocho hijos; tú tienes que agradecerme a mí, y tienes que demostrármelo"; que él le preguntó: "¿Cómo quieres que te lo demuestre?," y Ruiz le respondió: "Coge ese revólver y ve entrégate"; que como él estaba borracho así lo hizo; que al llegar a la carretera de "El Vigía," hizo un disparo con el revólver; que entonces se apareció Anacleto Vélez y le

quitó el revólver; que él estaba en estado de embriaguez y cuando despertó se encontró en la cárcel; que cuando salió bajo fianza Anacleto le entregó el revólver y le dijo: "Toma, aquí te mandó Ramón; yo se lo dí a él y me dijo que no, y que porque se lo cogían y yo no sé qué"; que Pedro Serrano era como un hermano para él y nunca tuvo diferencias con él; que Ramón Ruiz, el acusado y Pedro Serrano, el interfecto, tuvieron una diferencia por una tienda; que cuando llegó al sitio del suceso después del disparo, Ramón Ruiz estaba en la puerta de la casa con Anacleto, quien parece le tenía la puerta abierta, porque entró y en seguida me llamó; que Anacleto vivía con Ruiz y se envenenó cuando lo citaron como testigo; que Ramón Ruiz fué el que le sacó bajo fianza y le pagó al abogado; que él dijo que la oportunidad de decir toda la verdad era el día del juicio; que si él se prestó a decir que él había sido el autor del hecho fué por el estado de embriaguez en que se encontraba y que si llega a saber que la víctima era Pedro Serrano, que era como su hermano, jamás lo hubiera hecho; que cuando llegó al sitio no sabía quién era el muerto y que Ruiz no le dijo quién era; que Ruiz estaba temblando, en pijama y en medias.

Declarando en su propia defensa, el acusado apelante hizo un largo relato tendiente a demostrar que él es víctima de una conspiración entre los testigos de cargo para sacarle dinero.

Declaró en *rebuttal* el ex Fiscal Pérez Marchand, explicando cómo el muchacho Guillermo Levy y Piazza le habían relatado lo que sabían del crimen, en la misma forma en que lo hicieran ante el jurado. Y, declaró, por último, Josefa Rosado, madre del interfecto, y dijo: que su hijo y el acusado Ramón Ruiz habían tenido una diferencia por razón de una tienda y un embargo y estaban disgustados por un dinero que Serrano le reclamaba à Ruiz; que ella es comadre de Ruiz; que el día que Ruiz salió del hospital, como a las 2 p. m., estando ella sentada al lado de la cama de Ruiz, en su establecimiento, éste le preguntó si Serrano seguía siempre con

sus cosas y sus ideas; que ella le contestó que Serrano estaba, desde que Ruiz le embargó la tienda, sin trabajo, muy necesitado y que era digno de compasión, a lo que Ruiz contestó: "Comadre, cuanto se quiera; pero siempre y cuando Pedro siga como va, a mí me costará proceder"; que después de decir eso, Ruiz se levantó y fué para su casa en el callejón de San Juan; que como a las nueve de la noche llegó su hijo, la procuró y se despidió de ella hasta el día siguiente; que como a las diez vino su sobrino a darle la noticia de su muerte; que Maximino Piazza y su hijo siempre fueron íntimos amigos.

Toda esa prueba, con sus contradicciones y conflictos, fué sometida al jurado, jueces de los hechos y únicos facultados por la ley para pesar la evidencia y dictaminar sobre la credibilidad de los testigos. La prueba de cargo, a la que el jurado dió entero crédito, es a nuestro juicio suficiente para sostener y justificar el veredicto y la sentencia, *la cual debe ser confirmada.*

El Juez Asociado Sr. Todd, Jr., no intervino.